# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| LAURIE PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:13 CV 51 DDN |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Laurie Parker for supplemental security income under Title XVI of that Act, 42 U.S.C. §§ 1381, et seq. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 10.) For the reasons set forth below, the decision of the Administrative Law Judge is affirmed.

## I. BACKGROUND

Plaintiff Laurie Parker, born December 14, 1973, filed an application for Title XVI benefits on April 27, 2006. (Tr. 191-93.) She alleged an onset date of disability of January 1, 2004, due to seizures, brain mass, scoliosis, depression, hepatitis C, high blood pressure, alcoholism, and migraine headaches. (Tr. 208.) Plaintiff's applications were denied initially on July 13, 2006, and she requested a hearing before an ALJ. (Tr. 162-69.)

On July 23, 2008, following a hearing, the ALJ found plaintiff not disabled. (Tr. 11-22.) On August 19, 2010, the Appeals Council denied plaintiff's request for review, and she appealed to the district court. (Tr. 1-3.) On March 15, 2011, the district court reversed and remanded the case for further proceedings. (Tr. 1459.)

On February 23, 2012, following a second hearing, the ALJ again found plaintiff not disabled. (Tr. 1356-67.) On February 21, 2013, the Appeals Council denied plaintiff's request

for review.  (Tr. 1349-51.)  Thus, the second decision of the ALJ stands as the final decision of the Commissioner.

On January 7, 2010, plaintiff filed another application Title XVI benefits due to hepatitis C, chronic pancreatitis, stroke, and seizures.  (Tr. 1555-58.)  On April 22, 2010, the Social Security Administration found plaintiff disabled as of January 2010 and granted the application for benefits beginning on February 1, 2010.  (Tr. 1474-81.)

## II.  MEDICAL HISTORY

On January 12, 2001, plaintiff arrived at the emergency room, complaining of a headache that began five days earlier and stated that Advil and Tylenol did not relieve the pain.  The impression was a headache, and she received prescriptions and instructions to follow up.  (Tr. 739-40.)

On January 17, 2001, plaintiff arrived at the emergency room and complained of a migraine headache and fainting twice that day.  She rated the pain as 10 of 10.  The impression was a headache, and she received prescriptions and instructions to follow up.  (Tr. 737-38.)

On January 27, 2001, plaintiff arrived at the emergency room and complained of a headache and nausea that began two days earlier.  She received prescriptions and instructions to follow up.  (Tr. 734-36.)

On February 12, 2001, plaintiff arrived at the emergency room and complained of a migraine, chest tightness, and a tingling right hand.  She received prescriptions for Nubain and Phenergan.[1]  (Tr. 732-33.)

On February 24, 2001, plaintiff arrived at the emergency room and complained of a headache.  Plaintiff received prescriptions for Nubain and Vistaril.[2]  (Tr. 730-31.)

On April 7, 2001, plaintiff arrived at the emergency room and complained of pain in the low back and right wrist due to falling at work the previous night.  Mohammad Naseem, M.D.,

---

[1] Nubain is used to alleviate pain.  WebMD, http://www.webmd.com/drugs.  Phenergan is used to prevent and treat nausea, vomiting, and allergies.  (Id.)

[2] Vistaril is used to treat allergies and itching.  WebMD, http://www.webmd.com/drugs.

found X-rays of her low lumbar spine normal.  The impression was a low back contusion or sprain.  She received a prescription for Vioxx.[3]  (Tr. 727-29.)

On May 5, 2001, plaintiff arrived at the emergency room and complained of seizures, headaches, and chest pain.  She reported that she exhausted her medication supply for seizures and had seized that morning at work.  She received prescriptions for Depakote and Nubain and instructions to follow up.[4]  (Tr. 724-26.)

On June 2, 2001, plaintiff arrived at the emergency room and complained of headaches.  She received prescriptions for Nubain and Phenergan.  (Tr. 721-23.)

On June 25, 2001, plaintiff arrived at the emergency room and complained of migraine headaches and abdominal pain.  The impression was a headache.  She received prescriptions and instructions to follow up.  (Tr. 718-20.)

On June 28, 2001, plaintiff arrived at the emergency room and complained of rectal bleeding and abdominal cramping.  Abdomen X-rays indicated no obstruction or free air, and chest X-rays indicated obstructive pulmonary and granulomatous change but not active infiltrate.  The impression was abdomen pain and colitis.[5]  She received prescriptions and instructions to follow up with her primary care physician.  (Tr. 711-17.)

On August 26, 2001, plaintiff arrived at the emergency room and complained of migraine headaches that began the previous night and lack of sleep.  The impression was migraine headache.  She received prescriptions for Nubain and Vistaril and instructions to follow up.  (Tr. 709-10.)

On June 26, 2003, plaintiff arrived at the emergency room and reported that she awoke to someone pulling three males away from her at her cousin's house.  She reported that she had no memory of the details but that she last remembered consuming whiskey.  She complained of pain in the pelvis, leg, arm, and chest and headaches.  Joseph Jumao-As, M.D., diagnosed her as an alleged rape victim with multiple extremity contusions, chest contusion, and a superficial pelvic

---

[3] Vioxx is used to treat pain.  WebMD, http://www.webmd.com/drugs.

[4] Depakote is used to treat seizure disorders and to prevent migraine headaches.  WebMD, http://www.webmd.com/drugs.

[5] Colitis is the inflammation of the colon.  Stedman's Medical Dictionary, 408 (28th ed., Lippincott Williams & Wilkins 2006) ("Stedman").

laceration. He prescribed Rocephin, doxycycline, HIV tests, and family counseling.[6] (Tr. 833-38.)

On July 8, 2003, plaintiff saw Lance E. Monroe, M.D., to find a new family doctor. He assessed depression and prescribed Phenergan and Nexium.[7] (Tr. 401-04.)

On July 11, 2003, plaintiff received an evaluation for admission into a mental health facility. She reported homicidal and suicidal ideation, vaginal discharge, and abdominal pain. She was diagnosed with posttraumatic stress disorder and pelvic inflammatory disease. She received prescriptions for Vistaril, Rocephin, Zithromax, and Atarax.[8] (Tr. 829-32.)

On July 20, 2003, plaintiff saw Dr. Monroe for a medical release for mental health treatment. She reported that she struggled to cope with the rape. Dr. Monroe diagnosed depression and anxiety. (Tr. 389-91.)

On August 15, 2003, Cecil Massey, APN, explained to plaintiff her probable addiction to valium and hydrocodone. She recommended that plaintiff seek chronic pain management and speculated that plaintiff received prescriptions from another source. (Tr. 385-88.)

On August 26, 2003, plaintiff saw Mack Shotts, M.D. about her prescriptions. He continued her on Lorcet and valium and prescribed Diflucan and trazodone.[9] (Tr. 382-84.)

On September 3, 2003, plaintiff complained of fainting for five to ten seconds and a headache. Dr. Shotts diagnosed syncope and collapse. (Tr. 379-81.)

On September 25, 2003, plaintiff reporting that concrete fell into her eyes as she stacked concrete blocks. Dr. Shotts assessed a corneal abrasion. He prescribed Soma, Stadol injections, and Phenergan.[10] (Tr. 376-78.)

---

[6] Rocephin and doxycycline are antibiotics. WebMD, http://www.webmd.com/drugs.

[7] Nexium is used to treat stomach and esophagus problems. WebMD, http://www.webmd.com/drugs.

[8] Zithromax is an antibiotic. WebMD, http://www.webmd.com/drugs. Atarax is used to treat itching caused by allergies. Id.

[9] Lorcet is used to treat pain. WebMD, http://www.webmd.com/drugs. Diflucan is used to prevent fungal and yeast infection. Id. Trazodone is an anti-depressant. Id.

[10] Soma is used to treat muscle pain and discomfort. WebMD, http://www.webmd.com/drugs. Stadol is used to treat pain. Id.

On October 24, 2003, plaintiff complained of back pain and vomiting. Dr. Shotts assessed back pain and viral gastroenteritis. He prescribed Phenergan and Stadol injections. (Tr. 372-75.)

On December 19, 2003, plaintiff complained of symptoms that began two weeks earlier, including cough, diarrhea, fever, musculoskeletal symptoms, and vomiting. Dr. Shotts assessed pharyngitis and prescribed amantadine, Amoxil, and Histussin.[11] (Tr. 369-71.)

On December 28, 2003, plaintiff arrived at the emergency room in an inebriated state and complained of pain in the head, face, and left rib cage as a result of a physical altercation. Ted W. Duensing, D.O., observed swollen eyes. Jim Hazel, M.D., found that X-rays of her cervical spine and ribs revealed no significant abnormalities. Her brain CT scan revealed sinusitis and soft tissue swelling but no fractures. She was diagnosed with multiple contusions. (Tr. 820-28.)

On January 16, 2004, plaintiff complained of a cold and upper respiratory symptoms, including cough, headache, nasal discharge, and chest pains. She also requested a cardiology appointment. Dr. Shotts diagnosed chest pain. (Tr. 366-68.)

On March 17, 2004, plaintiff complained of sinus infection, cough, nasal drainage, sore throat, back pain, anxiety, and hemorrhoids. Asa A. Crow, M.D., assessed acute sinusitis, back pain, external hemorrhoids, and anxiety. He prescribed Amoxil, Phenergan, Anusol, and Toradol.[12] (Tr. 359-63.)

On April 13, 2004, a toxicology report indicated use of cannabis and benzodiazepines. She reported that medications controlled her pain. Dr. Shotts discussed overuse of medications and warned her of addiction to narcotics. She described back pain that arose one day earlier when she slipped and fell. He described her assessments of depression, headache, menopausal syndrome, backache, and anxiety as unchanged and prescribed Prilosec.[13] (Tr. 349-53.)

---

[11] Amantadine is used to treat influenza A. WebMD, http://www.webmd.com/drugs. Amoxil is an antibiotic. Id. Histussin is used to treat cold symptoms. Id.

[12] Anusol is used to treat hemorrhoids. WebMD, http://www.webmd.com/drugs. Toradol is used for pain. Id.

[13] Prilosec is used to treat stomach and esophagus problems. WebMD, http://www.webmd.com/drugs.

On May 6, 2004, plaintiff complained of her right ankle and requested refills. Dr. Shotts encouraged plaintiff to lower the dosage of her narcotic medication. He diagnosed a minor ankle strain/sprain. (Tr. 346-48.)

On June 3, 2004, plaintiff complained of cough and difficulty breathing and requested refills. Dr. Crow diagnosed acute bronchitis, minor peptic ulcer disease, and minor irritable bowel syndrome. (Tr. 339-42.)

On July 15, 2004, plaintiff complained of migraine headaches and rashes on her feet and the back of her legs. She described the headaches as throbbing. Dr. Shotts assessed a headache and prescribed Stadol. (Tr. 332-34.)

On September, 28, 2004, plaintiff requested refills and reported a stable mental condition and that her treatment controlled her pain. She also complained of an unproductive cough. (Tr. 325-26.)

On November 24, 2004, plaintiff complained of back pain and requested refills. She stated that she injured her back two weeks earlier moving furniture, which caused dull pain in her low back. Dr. Shotts assessed her backache condition as deteriorated. (Tr. 319-21.)

On December 7, 2004, Rodney T. Routson, D.O., performed a neurological consult. Plaintiff reported the following. She suffered a seizure the previous week, fell off her bed, and hit her head. Her father informed Dr. Routson that plaintiff remained unconscious for about five minutes. She went to the emergency room and received medication. Upon awakening, plaintiff had a severe diffuse headache. She is forgetful, shaky, and has pain in her neck and low back. Despite her history of migraines, she has not had migraines for years. Her migraine symptoms include blurred visions, flashing lights, double vision, and feeling inebriated. She has had seizures since 2000 but has not taken medication. Her last seizure occurred about one year earlier. Her current medications include Lorcet, Xanax, Nexium, Phenergan, Zantac, and Soma. She smokes one pack of cigarettes per day. She does not work but experiences stress, chest pain, and high blood pressure. She also experiences poor appetite, nausea, blurred and double vision, hearing loss, and ringing in the ears. She also has a history of a suicide attempt, depression, and nervousness. (Tr. 1004-05.)

Dr. Routson performed a physical examination and noted anxiety and depression. He also reviewed her lumbar MRI and brain CT scans. His impressions included a history of generalized

seizures, classic migraine cephalgia, muscle contraction cephalgia, cervical and lumbosacral somatic dysfunction but no cervical or lumbar radiculopathy or myelopathy. He noted that she received Dilantin for seizures but had not taken it, and he emphasized that she comply with the prescription. He recommended home therapy for her cervical arthralgia and that she alter her behavior to decrease her back pain. He recommended no neurosurgical intervention and opined that surgery would not alleviate her back pain. (Tr. 1004-06.)

On December 8, 2004, plaintiff complained of a headache with a sudden onset, chills, sweating, and vomiting. Dr. Shotts described her headache condition as deteriorated and prescribed Imitrex.[14] (Tr. 316-18.)

On December 9, 2004, plaintiff received a brain MRI. Larry Johnson, M.D. found minimal cortical bone along the rim with low-density fat in the center of a petrous mass but found the MRI to be otherwise normal. He opined that plaintiff could benefit from a neurological consult. (Tr. 257.)

On January 18, 2005, plaintiff arrived at the emergency room, complaining of a right earache that began three days earlier. She also complained of a seizure three days earlier followed by bloody vomiting and a headache that began the same day. She also complained of fatigue and malaise. Dr. Monroe described her anxiety and headache conditions as deteriorated and assessed a history of nosebleeds, epigastric pain, and seizure disorder. He prescribed alprazolam.[15] (Tr. 309-11, 701-06.)

On January 19, 2005, plaintiff complained of a severe headache. Dr. Crow assessed minor peptic ulcer disease and heat exhaustion. He prescribed her Toradol. (Tr. 304-06.)

On February 23, 2005, plaintiff reported that she typically suffered two to three seizures per day and received an electroencephalography (EEG). Ron South, M.D., found her EEGs normal but recommended video EEG monitoring. Richard R. Reinholtz, M.D., also found the head CT to be normal. (Tr. 256, 698.)

---

[14] Imitrex is used to treat migraines. WebMD, http://www.webmd.com/drugs.

[15] Alprazolam is used to treat anxiety and panic disorders. WebMD, http://www.webmd.com/drugs.

On February 26, 2005, plaintiff complained of a severe headache and requested a refill of Mepergan Fortis.[16] Dr. Crow assessed a headache, injected Stadol and Phernergan, and prescribed Mepergan Fortis. (Tr. 295-98.)

On March 4, 2005, plaintiff reported that she continued to have headaches. Dr. Shotts impression was a headache. (Tr. 293-94.)

On March 16, 2005, plaintiff requested medication refills. She reported a stable mental condition and that her medication controlled her pain. She also complained of anxiety. (Tr. 291-92.)

On April 2, 2005, plaintiff arrived at the emergency room, complaining of a right arm laceration caused by a glass door. She received sutures, and Jimmy Darrell Bonner, M.D., diagnosed three lacerations. (Tr. 259-64.)

On May 12, 2005, plaintiff requested refills but reported that she no longer had insurance. She also reported that she had a seizure the previous night. (Tr. 283.)

On May 31, 2005, plaintiff arrived at the emergency room, complaining of chest and epigastric pain that inhalation exacerbated. She also reported stress. Chest x-rays revealed chronic changes and no active infiltrate, and an electrocardiogram revealed normal sinus rhythm with marked sinus arrhythmia. A nurse observed the strong odor of alcohol. Plaintiff left the hospital against the advice of the attending physician, citing a nurse's demeanor and threatening to sue. (Tr. 266-74.)

Later that day, plaintiff was arrested due to an outstanding warrant. During her incarceration, she again complained of chest pain and was brought to emergency room. She reported that chest pain centered in the left side of her chest, which palpitation and coughing exacerbated. Dane Flippin, M.D., stated that her labs were normal and diagnosed costochronditis.[17] (Tr. 275-80.)

---

[16] Mepergan Fortis is a narcotic pain reliever and anti-nausea medication. Drugs.com, http://www.drugs.com/mtm/mepergan-fortis.html (last visited December 17, 2013).

[17] Costochondritis is an inflammation of the junctions where the upper ribs join with the cartilage that holds them to the breastbone, or sternum. WebMD, http://www.webmd.com/pain-management/costochondritis (last visited December 17, 2013.)

On June 9, 2005, plaintiff requested medication for pain. Andrea S. Godsey informed plaintiff that her prescriptions were intended to last through June 12, 2005. Plaintiff reported that she had a seizure that morning and that she no longer had Dilantin.[18] Ms. Godsey informed her that her Dilantin prescription allowed her a refill and advised patient to go to the emergency room. Plaintiff threatened to find another medical provider. (Tr. 282.)

On June 14, 2005, plaintiff arrived at the emergency room, complaining about a left hand injury caused by falling off her scooter. She further reported that she hit the right side of her head on concrete. CT scans of her head revealed no acute intracranial pathology, X-rays of her left hand revealed a fracture in her ring finger, and X-rays of her chest revealed no acute cardiopulmonary disease. She was diagnosed with chest wall and left hand contusion. (Tr. 802-15.)

On July 8, 2005, plaintiff requested refills of her pain medication. Roger Cagle, M.D., diagnosed seizure disorder, migraine headaches, brain neoplasm, anxiety, and depression. (Tr. 486-87.)

On August 8, 2005, plaintiff requested refills of her pain medication and complained of rashes on her feet and arms. Dr. Cagle diagnosed rash, anxiety, depression, and low back pain. (Tr. 488-89.)

On September 8, 2005, plaintiff complained of vomiting and diarrhea. Dr. Cagle diagnosed viral enteritis, migraine headaches, anxiety, and depression. (Tr. 490-91.)

On October 9, 2005, plaintiff arrived at the emergency room, complaining of high blood pressure and alcohol withdrawal. Plaintiff suffered from chronic alcoholism and had been in rehabilitation for one week. She further reported that she suffered a seizure that morning and had migraine headaches. Muha Azharuddin, M.D., diagnosed migraine headaches, uncontrolled hypertension, and hypokalemia.[19] (Tr. 412-19.)

---

[18] Dilantin is used to prevent and control seizures. WebMD, http://www.webmd.com/pain-management/costochondritis (last visited December 17, 2013.)

[19] Hypokalemia is a metabolic imbalance characterized by extremely low potassium levels in the blood. WebMD, http://www.webmd.com/pain-management/costochondritis (last visited December 17, 2013.)

On December 26, 2005, plaintiff arrived at the emergency room, complaining of chest pain and headache. Chest X-rays revealed stable granulomatous changes but no acute process. Mark Smith, M.D., refilled plaintiff's Norvasc prescription and arranged an outpatient treadmill stress test.[20] (Tr. 503-12.)

On January 13, 2006, Family Counseling Center discharged plaintiff from an outpatient program for failure to attend. Prior to admission, plaintiff reported drinking on a daily basis. Her parole officer referred her to the program due to the Department of Family Services removing her two children from her home. Plaintiff reported unemployment and her attempts to obtain disability benefits. She also noted that she was on probation due to theft. She was diagnosed with alcohol abuse and posttraumatic stress disorder and assessed a GAF of 55.[21] Plaintiff completed a detoxification program and a thirty-day inpatient program before transferring to an outpatient program. (Tr. 406-08.)

On January 17, 2006, plaintiff requested refills of pain medication and discussed her heart problems. Dr. Cagle diagnosed benign hypertension, chest wall pain, low back pain, anxiety, and depression. He also referred her to cardiology. (Tr. 492-93.)

On February 8, 2006, plaintiff arrived at the emergency room complaining of chest pain. A gallbladder ultrasound revealed cholelithiasis, and a chest X-ray revealed no significant abnormality.[22] B. Oladiran, M.D., assessed chest pain, acute pancreatitis, hypertension, alcohol abuse, cholelithiasis, hepatitis probably related to alcohol, and seizure disorder. She was discharged on February 10, 2006. (Tr. 420-52.)

---

[20] Norvasc is used to treat high blood pressure. WebMD, http://www.webmd.com/drugs.

[21] A GAF score helps summarize a patient's overall ability to function. A GAF score has two components. The first component covers symptom severity and the second component covers functioning. A patient's GAF score represents the worst of the two components. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. 2000) ("DSM").
On the GAF scale, a score from 51 to 60 represents moderate symptoms (such as flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (such as few friends, conflicts with peers or co-workers). Id.

[22] Cholelithiasis is the presence of concretions in the gallbladder or bile ducts. Stedman at 366.

On February 15, 2006, plaintiff followed up on her emergency room visit with Dr. Cagle. Dr. Cagle diagnosed cholelithiasis, benign hypertension, chest wall pain, anxiety, and depression. He referred her to surgery.

On February 16, 2006, Family Counseling Center discharged plaintiff from a program for failure to attend. When she began treatment on February 6, 2006, plaintiff reported that she drank only once during the previous month but that her family told her parole officer that she drank heavily. She also reported a recent heart attack. She was diagnosed with alcohol dependence and assessed a GAF of 45.[23] She complained of chest pain during one of the sessions and was taken to the emergency room. After her release from the emergency room, she reported that she would undergo surgery and did not return thereafter. (Tr. 1008-10.)

On March 2, 2006, plaintiff arrived at the emergency room, complaining of an unproductive cough, dysuria, and nausea. She was diagnosed with hypokalemia and upper respiratory infection. (Tr. 791-801.)

On March 6, 2006, Steve Pu, D.O., surgically removed plaintiff's gallbladder. (Tr. 785-90.)

On March 15, 2006, plaintiff complained of diffuse abdomen pain that began after the gallbladder surgery. Dr. Cagle diagnosed low back pain, generalized abdominal pain, anxiety, depression, and seizure disorder. He referred her to cardiology. (Tr. 498-99.)

On April 14, 2006, plaintiff requested medication refills. Dr. Cagle diagnosed low back pain, anxiety, depression, caries, and toothache.[24] (Tr. 500-01.)

On May 9, 2006, plaintiff requested refills. Dr. Cagle diagnosed seizure disorder, low back pain, multiple joint pain, anxiety, depression, and insomnia. (Tr. 601-03.)

On May 18, 2006, Fraser Richards, M.D., noted that Norvasc controlled plaintiff's hypertension symptoms but that Dr. Cagle discontinued Norvasc. Plaintiff reported that since the discontinuation, she has experienced more headaches, dizziness, chest pain, and palpitations. Dr. Richards recommended anti-hypertensive therapy and prescribed Norvasc. He further

---

[23] A GAF of 41 through 50 is characterized by serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM at 32-34.

[24] Caries is the microbial destruction or necrosis of teeth. Stedman at 315.

recommended a stress echocardiogram. She also received a 24-hour Holter monitor for palpitations.[25] Plaintiff additionally reported dyspnea, edema, fatigue, tingling fingers, occasional blurred vision, and dizziness. (Tr. 526-29.)

On March 25, 2006, plaintiff underwent a stress echocardiogram. W. Brian Bailey, M.D. found mild pulmonic and tricuspid regurgitation, trivial mitral regurgitation, normal resting level of systolic function, adequate exercise tolerance, and no evidence of significant obstructive coronary disease. (Tr. 523-25.)

On March 30, 2006, Dr. Bailey considered the results of the Holter monitor. He found that they revealed sinus tachycardia but no bradycardia. (Tr. 522.)

On June 5, 2006, plaintiff complained of vomiting, decreased appetite, and headache. Dr. Cagle diagnosed migraine headache, nausea and vomiting, seizure disorder, low back pain, multiple joint pain, anxiety, and depression. (Tr. 598-601.)

On June 11, 2006, plaintiff arrived at the emergency room, complaining of severe abdominal pain. Her spouse indicated that she intermittently lost consciousness during the trip to the hospital. However, plaintiff left the hospital prior to receiving treatment and without notifying a physician. (Tr. 777-84.)

On July 6, 2006, H. Styer submitted a Physical Residual Functional Capacity Assessment form regarding plaintiff. H. Styer found that plaintiff could occasionally lift and carry twenty pounds, frequently carry ten pounds, stand and walk about six hours in an eight-hour workday, and sit for about six hours. H. Styer further found that plaintiff could never climb ladders, ropes, or scaffolds and could not work around hazards, including machinery and heights, due to her seizure disorder. (Tr. 530-35.)

Also on July 6, 2006, plaintiff complained of aches. Dr. Cagle diagnosed seizure disorder, low back pain, multiple joint pain, anxiety, and depression. (Tr. 595-97.)

On July 10, 2006, M. Toll submitted a Psychiatric Review Technique form regarding plaintiff. M. Toll determined that plaintiff suffered from depression, anxiety, and drug and alcohol abuse. M. Toll further found that plaintiff had moderate restrictions in daily living

---

[25] A Holter monitor, or ambulatory electrocardiogram, records the electrical activity of the heart during usual activities. WebMD, http://www.webmd.com/heart-disease/ambulatory-electrocardiogram.

activities and mild difficulties in social functioning and maintaining concentration, persistence, and pace. (Tr. 536-48.)

On July 10, 2006, M. Toll also submitted a Mental Residual Functional Capacity Assessment regarding plaintiff. M. Toll found her moderately limited regarding the ability to understand, remember, and perform detailed instructions and in the ability to complete a normal work schedule or perform at a consistence pace without an unreasonable number or length of breaks. Plaintiff indicated that she could prepare simple meals, perform household chores, shop, drive, manage finances, and get along with others. M. Toll concluded that plaintiff could perform work, assuming treatment and sobriety. (Tr. 549-52.)

On August 31, 2006, plaintiff complained that she had a seizure one day earlier and had sharp chest pains that radiated to her left arm. She also reported anxiety, that her counselor's accusations that she had been drinking upset her, and that she had a difficult encounter with her children. Dr. Cagle diagnosed seizure disorder, chest pain, low back pain, anxiety, depression, and alcohol abuse in remission. (Tr. 590-91.)

On September 26, 2006, plaintiff requested refills four to five days before her prescriptions expired. Dr. Cagle diagnosed alcohol abuse in remission, low back pain, anxiety, depression, and insomnia. (Tr. 587-89.)

On October 21, 2006, plaintiff complained of nausea and vomiting. Dr. Cagle diagnosed anxiety, depression, seizure disorder, headaches, alcohol abuse in remission, and viral enteritis. (Tr. 584-86.)

On October 22, 2006, plaintiff arrived at the emergency room, complaining of abdominal pain. An abdominal and pelvic CT scan revealed no evidence of bowel obstruction, abscess, or collection. She was diagnosed with abdominal pain and acute pancreatitis and prescribed Percocet. (Tr. 669-77.)

On October 23, 2006, plaintiff complained of abdominal pain, vomiting, and nausea. Dr. Cagle diagnosed epigastric abdominal pain and acute pancreatitis and admitted her for observation. (Tr. 582-83.)

On October 24, 2006, plaintiff received an esophagogastroduodenoscopy.[26]  Kenneth F. Rodgers, M.D., diagnosed biliary gastritis, gastroesophageal reflux, and Grade I or II esophagitis, and he prescribed Protonix.[27]  (Tr. 660-68.)

On November 1, 2006, plaintiff arrived at the emergency room, complaining of abdominal pain.  She reported that she had one drink of brandy due to pain and that she ate white beans despite instructions for a clear liquid diet.  An abdomen X-ray revealed nonspecific bowel gas pattern, and a chest X-ray revealed no acute infiltrate.  She was diagnosed with pancreatitis.  (Tr. 645-52.)

On November 9, 2006, plaintiff requested pain medication and stated that she could not take hydrocodone.  Dr. Cagle diagnosed ankylosing spondylitis, low back pain, multiple joint pain, anxiety, and depression.[28]  (Tr. 580-81.)

On November 21, 2006, plaintiff requested refills.  Dr. Cagle diagnosed epigastric abdominal pain, acute hepatitis C, and multiple joint pain.  (Tr. 577-79.)

On December 18, 2006, plaintiff complained of nausea, cramping, and right shoulder pain. Dr. Cagle diagnosed generalized abdominal pain, acute hepatitis C, anxiety, and multiple joint pain.  (Tr. 574-75.)

On January 12, 2007, plaintiff complained of a throbbing headache and reported that she had a gas leak in the house the previous night.  Dr. Cagle diagnosed benign hypertension, headache, low back pain, multiple joint pain, anxiety, depression, and alcohol abuse in remission. (Tr. 570-71.)

On February 12, 2007, plaintiff complained of a congested nose and requested refills.  Dr. Cagle diagnosed low back pain, alcohol abuse in remission, multiple joint pain, benign hypertension, anxiety, and depression.  (Tr. 562-63.)

On March 24, 2007, plaintiff complained of anxiety, low back pain, insomnia, and elevated blood pressure.  She reported that she had a seizure two days earlier and that she

---

[26] Esophagogastroduodenoscopy is the endoscopic examination of the esophagus, stomach, and duodenum.  Stedman at 671.

[27] Protonix is used to treat certain stomach and esophagus problems.  WebMD, http://www.webmd.com/drugs.

[28] Ankylosing spondylitis is arthritis of the spine.  Stedman at 1813.

exhausted her seizure medication also two days earlier. She further reported a headache and that she had three or four headaches that week. Dr. Cagle diagnosed benign hypertension, seizure disorder, anxiety, depression, and low back pain and recommended a brain MRI. He also counseled her on medication compliance. (Tr. 564-66.)

On March 25, 2007, plaintiff arrived at the emergency room, complaining of abdominal pain. X-rays of her abdomen revealed no acute findings. The impression of Michael Tomlinson, M.D., was pancreatitis and hepatitis C. (Tr. 629-38.)

On March 26, 2007, plaintiff returned to the emergency room, complaining that the abdominal pain had worsened. An abdomen CT revealed no acute abnormalities. Joseph Rhodes, M.D., diagnosed pancreatitis. She was discharged on March 28, 2007. (Tr. 622-28.)

On April 5, 2007, plaintiff arrived at the emergency room, complaining of abdominal pain and bloody stool. She reported that she drank gin to alleviate the pain. Medical personnel refused her pain medication, which upset her. John Wilson, M.D., diagnosed abdominal pain, elevated liver function test levels, and gastrointestinal bleeding. (Tr. 653-58.)

On April 13, 2007, plaintiff arrived at the emergency room due to overdosing on alcohol, Valium, and other medications. Family and emergency staff stated that plaintiff threatened to kill herself. Plaintiff threatened medical staff as they attempted to restrain her, and she refused to take activated charcoal and was admitted to the intensive care unit. The impression of Timothy W. McPherson, D.O., was drug overdose, alcohol intoxication, and seizure disorder with a low Dilantin level. Plaintiff reported that she consumed a half-pint to a pint of brandy daily, despite chronic pancreatitis and indications of liver cirrhosis. She reported feeling overwhelmed and depressed due to legal problems and mental health issues. She indicated that she would go to jail when she left the hospital due to charges for driving under the influence of alcohol and with a suspended license. She reported that drinking stemmed from the 2001 rape. Nikolay Horozov diagnosed depressive disorder, alcohol dependence, and anxiolytic abuse and assessed a GAF of 60 at discharge but a GAF of 25 at admission.[29] He prescribed Ambien, Dilantin, lorazepam, and

_____

[29] On the GAF scale, a score from 21–30 indicates behavior that is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas. DSM at 32-24.

gabapentin.[30]   He also scheduled a residential rehabilitation program for plaintiff.   She was discharged on April 19, 2007.  (Tr. 746-76.)

On May 12, 2007, plaintiff complained of migraine headaches and nausea.  Dr. Cagle diagnosed seizure disorder, migraine headache, anxiety, depression, muscle spasms, and low back pain.  (Tr. 568-69.)

On May 14, 2007, plaintiff arrived at the Women's Eastern Reception, Diagnostic, and Correctional Center.   During incarceration, plaintiff complained of seizures, abdominal pain, dizziness, and bloody stool.   She was also treated for gastritis and hypertension.   On May 20, 2007, plaintiff met with psychiatrist Ahmed A. Taranissi, who diagnosed posttraumatic stress disorder, dysthymic disorder, and alcohol dependence and assessed a GAF of 65.[31]   The Department of Corrections medically cleared her to work in food service.   She was released on September 11, 2007.  (Tr. 843-946.)

On September 13, 2007, plaintiff arrived at the emergency room, complaining of epigastric pain that began two days earlier.  Brock Allen, M.D., diagnosed liver problems.  (Tr. 956-65.)

On September 14, 2007, plaintiff complained of rectal bleeding and requested refills.  Dr. Cagle diagnosed low left quadrant abdominal pain, colitis, seizure disorder, headache, anxiety, and depression.  (Tr. 991-93.)

On September 16, 2007, plaintiff arrived at the emergency room, complaining of abdominal pain.  Mark M. Smith, M.D., diagnosed abdominal pain.  (Tr. 950-55.)

On September 20, 2007, plaintiff arrived at the emergency room, complaining of syncope and abdominal pain.  Dr. Cagle requested a stool sample. (Tr. 1763-64.)

On October 10, 2007, plaintiff arrived at the emergency room, complaining of abdominal pain, diarrhea, and vomiting.  X-rays of her abdomen revealed no acute findings.  (Tr. 970-78.)

---

[30] Lorazepam is used to treat anxiety.  WebMD, http://www.webmd.com/drugs.  Gabapentin is used to prevent and control seizures.  Id.

[31] A GAF score of 61-70 is characterized by some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning with some meaningful interpersonal relationships. DSM at 32-34.

On October 12, 2007, plaintiff requested refills. Dr. Cagle diagnosed seizure disorder, headache, colitis, anxiety, and depression. (Tr. 988-90.)

On November 12, 2007, plaintiff requested refills and a brain MRI and complained of a throbbing headache. Dr. Cagle diagnosed headache, seizure disorder, benign hypertension, anxiety, and depression. On November 15, 2007, Dr. Cagle increased plaintiff's Dilantin dosage. (Tr. 983-87.)

On December 10, 2007, plaintiff complained of increased pain and congested nose. Dr. Cagle diagnosed seizure disorder, headache, benign hypertension, anxiety, depression, and upper respiratory infection. (Tr. 980-82.)

Also on December 10, 2007, plaintiff arrived at the emergency room, reporting that she had suffered a seizure. John Wilson, M.D., diagnosed seizure-like activity and mild dehydration. (Tr. 1026-36.)

On December 20, 2007, plaintiff arrived at the emergency room, complaining of abdominal pain in the right upper quadrant. Greg Byrne, M.D., found her abdomen X-rays, urinalysis, and blood tests unremarkable. (Tr. 1038-43.)

On January 7, 2008, plaintiff complained of stomach cramps. Dr. Cagle diagnosed headache, seizure disorder, benign hypertension, anxiety, and depression. (Tr. 1065-67.)

On January 10, 2008, plaintiff complained of polyps and mass in the nose and brain. Carl E. Bosley, Ph.D., recommended allergy screening and a sinus CT. (Tr. 1044-46.)

On January 17, 2008, plaintiff arrived at the emergency room, complaining of abdominal pain, nausea, vomiting, and back pain. William Henry, M.D., found atelectasis in the lung, only slight elevation of the liver function test results, dilation of a bile duct and pancreatic duct and found her blood tests and CT scans otherwise unremarkable. (Tr. 1740-44.)

On January 21, 2008, a sinus CT scan revealed some abnormalities. (Tr. 1700.)

On February 4, 2008, plaintiff saw Madad Ali, M.D., for elevated liver function test results and positive results for H. Pylori. She also complained of right abdominal pain that occurred after eating. Dr. Ali assessed H. Pylori and hepatitis C infection and ordered a gamma-glutamyl transpeptidase (GGT) test to rule out bile duct obstruction. He further ordered hepatitis

A and B vaccination and an ultrasound exam of her common bile duct and prescribed Prevpac.[32] (Tr. 1047.)

On February 5, 2008, plaintiff followed up with Dr. Cagle. He administered the hepatitis B vaccine and diagnosed H. Pylori infection, peptic disease, acute hepatitis C, seizure disorder, benign hypertension, anxiety, and depression. (Tr. 1062-64.)

On March 5, 2008, plaintiff followed up with Dr. Cagle. He again administered a hepatitis B vaccine and diagnosed acute hepatitis C, low back pain, anxiety, depression, peptic disease, and benign hypertension. He also prescribed Ambien. A brain MRI scan revealed a mass, but Robert L. Ballard found the mass unchanged compared to a scan taken on December 9, 2004. He also found that the mass was a small meningioma rather than a neuroma. (Tr. 1048-49.)

On March 17, 2008, plaintiff arrived at the emergency room, complaining of abdominal pain. John K. Phillips found that the abdomen and pelvic CT scan revealed borderline distended loops of bowel that could be caused by ileus or partial bowel obstruction. She was diagnosed with pancreatitis. (Tr. 1068-87.)

On March 31, 2008, plaintiff saw Paul Tolentino, M.D., Ph.D., for a neurological evaluation. Plaintiff reported that she had a four-year history of grand mal seizures with an acute increase at the beginning of the month. She reported that she does not have seizures with appropriate Dilantin levels. She also reported that she had headaches over the past two years that were primarily frontal and radiated to her neck. She noted blurred and double vision, difficulties standing, bending, coughing, sneezing, and mild paresthesias in her right hand. Her medications included Dilantin, Phernergan, Mobic, Celexa, Lorcet Plus, Valium, and Norvasc.[33] She also complained of low back pain. Dr. Tolentino's impression was that the meningioma appeared unlikely to cause seizures or headaches. He recommended monitoring the growth of the meningioma. (Tr. 1646-49.)

---

[32] Prevpac is used to treat stomach or intestinal ulcers caused by H. pylori. WebMD, http://www.webmd.com/drugs.

[33] Mobic is used to treat arthritis. WebMD, http://www.webmd.com/drugs. Celexa is an antidepressant. Id.

On April 4, 2008, plaintiff saw Dr. Cagle for a follow-up. He diagnosed brain neoplasm, central nervous disorder, acute hepatitis C, abdominal pain, chronic pancreatitis, benign hypertension, low back pain, multiple joint pain, and behavior disorder. (Tr. 1626-28.)

On April 11, 2008, an abdominal ultrasound revealed a possible common duct calculus or stone. Dr. Ali had scheduled an endoscopic retrograde cholangiopancreatography but postponed the procedure because plaintiff could not sleep due to medications.[34] (Tr. 1651-58.)

On April 16, 2008, Dr. Ali performed an endoscopic retrograde cholangiopancreatography on plaintiff. He diagnosed chronic pancreatitis with dilated pancreatic duct. He referred plaintiff to a hepatobiliary service. A liver biopsy revealed Grade IV chronic hepatitis with fibrosis. (Tr. 1302-04.)

On April 20, 2008, plaintiff arrived at the emergency room, complaining of abdominal pain. CT scan of her abdomen and pelvis revealed a new peritoneal nodule and subcutaneous nodule. John K. Philips opined that the nodules required further evaluation. Jerry R. Biggerstaff diagnosed chronic pancreatitis. (Tr. 2036-46.)

On April 25, 2008, Dr. Ali performed an endoscopic retrograde cholangiopancreatography with a sphincterotomy and stent placement. Dr. Ali diagnosed stricture of the common bile duct. (Tr. 1300-01.)

On May 2, 2008, plaintiff complained of nausea due to a PET scan that morning. She reported doing well on her medication. Dr. Cagle diagnosed brain neoplasm, central nervous disorder, acute hepatitis C, generalized abdominal pain, chronic pancreatitis, benign hypertension, low back pain, multiple joint pain, and behavior disorder. (Tr. 1698-99.)

On May 10, 2008, plaintiff arrived at the emergency room, complaining of abdominal pain and panic attack. She reported Stage 4 cirrhosis and stress due to her daughter. She further reported that she used her father's inhaler because she could not breathe. Dr. Tomlinson diagnosed panic disorder. (Tr. 2028-35.)

On May 28, 2008, plaintiff arrived at the emergency room, complaining of abdominal pain, nausea, and vomiting. Dr. Cagle diagnosed abdominal pain, pancreatitis, and hepatitis C. Plaintiff was discharged on May 30, 2008. On May 31, 2008, Dr. Cagle prescribed Ultram for pain. (Tr. 1092-95, 1281-87.)

---

[34] Cholangiopancreatography is a contrast radiographic examination of the bile and pancreatic ducts after radiopaque dye. Stedman at 364.

On June 8, 2008, plaintiff arrived at the emergency room, complaining of abdominal pain that occurred after her son accidently elbowed her in the abdomen the previous night. CT scans of her abdomen and pelvis revealed no acute findings. (Tr. 1728-36.)

On June 13, 2008, plaintiff saw Jeffrey Crippin, M.D., for a cirrhosis consultation. His impression was chronic hepatitis C with cirrhosis, possible common bile duct stone, and seizure disorder. (Tr. 1795-96.)

On June 26, 2008, plaintiff saw Dr. Cagle. She indicated that she did well on her medication, and Dr. Cagle planned on hepatitis C treatment. He diagnosed brain neoplasm, central nervous disorder, acute hepatitis C, generalized abdominal pain, chronic pancreatitis, seizure disorder, benign hypertension, low back pain, multiple joint pain, anxiety, and depression. (Tr. 2108-10.)

On July 5, 2008, plaintiff arrived at the emergency room, complaining of abdominal pain. Plaintiff reported that she began new medication for hepatitis and that it could irritate her liver. Walt Short, M.D., found her CT scans and blood tests unremarkable but noted slightly elevated liver function test results. He diagnosed abdominal pain. (Tr. 1212-27.)

On July 28, 2008, plaintiff complained of heat exhaustion and that Pegasys resulted in increased liver function test results.[35] He administered a hepatitis B vaccine and diagnosed acute hepatitis C, benign hypertension, seizure disorder, central nervous disorder, brain neoplasm, chronic pancreatitis, generalized abdominal pain, anxiety, and depression. He warned her about abuse and addiction to her medication. (Tr. 2105-07.)

On August 22, 2008, plaintiff complained of a swollen abdomen and nausea. Dr. Cagle diagnosed acute hepatitis C, benign hypertension, seizure disorder, central nervous disorder, malignant brain neoplasm, chronic pancreatitis, generalized abdominal pain, anxiety, and depression. (Tr. 2101-03.)

On August 27, 2008, plaintiff arrived at the emergency room, complaining of abdominal pain. Dr. Short found her blood tests and CT scans unremarkable. He diagnosed abdominal pain and prescribed Zofran, Stadol, and Phenergan.[36] (Tr. 1195-1211.)

---

[35] Pegasys is used to treat chronic hepatitis C. WebMD, http://www.webmd.com/drugs.

[36] Zofran is used to prevent nausea and vomiting. WebMD, http://www.webmd.com/drugs.

On September 25, 2008, plaintiff complained of cough and nasal drainage. Dr. Cagle administered depomedrol and Lincocin and diagnosed upper respiratory infection, acute hepatitis C, benign hypertension, seizure disorder, central nervous disorder, malignant brain neoplasm, chronic pancreatitis, anxiety, and depression.[37] (Tr. 1140-42.)

On October 28, 2008, plaintiff complained of abdominal pain, nausea, back spasm, and anxiety. Plaintiff reported that she exhausted her pain medication one and a half weeks earlier. Dr. Cagle diagnosed chronic hepatitis C, vaccination pneumonia and influenza, chronic pancreatitis, pancreatic insufficiency, cirrhosis, seizure disorder, central nervous disorder, malignant brain neoplasm, anxiety, and depression. He also warned her about abuse and addiction to medication. Drug screening indicated use of amphetamines and benzodiazepines. (Tr. 1135-38, 1148.)

On October 30, 2008, plaintiff complained of nausea and abdominal pain. She reported that her pain medications were no longer effective. Dr. Cagle diagnosed generalized abdominal pain, viral enteritis, chronic pancreatitis, pancreatic insufficiency, and cirrhosis. Drug screening indicated use of benzodiazepines and oxycodone. (Tr. 1131-34, 1149.)

On November 12, 2008, plaintiff arrived at the emergency room, complaining of abdominal pain. Drug screening indicated use of benzodiazepines and cannibinoids. She was diagnosed with chronic pancreatitis. (Tr. 1327-39.)

On November 24, 2008, plaintiff complained of nausea, fever, abdominal pain, and right ear pain. Dr. Cagle diagnosed chronic pancreatitis, abdominal pain, pancreatic insufficiency, cirrhosis, seizure disorder, central nervous disorder, brain neoplasm, acute hepatitis C, upper respiratory infection, otitis media, and pharyngitis. (Tr. 1128-30.)

On December 23, 2008, plaintiff complained of upper abdominal pain, anxiety, and lack of sleep, energy, and appetite. Dr. Cagle diagnosed chronic pancreatitis, abdominal pain, pancreatic insufficiency, cirrhosis, seizure disorder, central nervous disorder, brain neoplasm, and acute hepatitis C. (Tr. 1126-27.)

On January 5, 2009, plaintiff complained of abdominal pain, vomiting, nausea, and bloody stools. Dr. Cagle diagnosed generalized abdominal pain, chronic pancreatitis, pancreatic insufficiency, cirrhosis, focal seizure, central nervous disorder, brain neoplasm, and urinary tract

---

[37] Depomedrol decreases the immune system response to reduce swelling, pain, and allergic reactions. WebMD, http://www.webmd.com/drugs. Lincocin treats bacterial infection. Id.

infection.  Drug screening indicated use of benzodiazepines, THC, and oxycodone.  (Tr. 1121-25.)

On January 22, 2009, plaintiff complained of anxiety, abdominal pain, and nausea.  Dr. Cagle diagnosed generalized abdominal pain, pancreatic insufficiency, chronic pancreatitis, cirrhosis, acute hepatitis C, seizure disorder, central nervous disorder, brain neoplasm, anxiety, and depression.  (Tr. 1118-20.)

On February 20, 2009, plaintiff arrived at the emergency room, complaining of a seizure.  Her family reported that the seizure lasted for thirty minutes.  Plaintiff reported that she had exhausted her pain medication one and a half weeks earlier and that her medications were stolen.  Greg Greensberg, M.D., prescribed Cerebyx and opined that plaintiff had lied about her medications.[38]  He refused to give her opiates because she had been drinking.  A brain MRI indicated that the meningioma was stable.  (Tr. 1930-39.)

On February 23, 2009, plaintiff complained of nausea, anxiety, migraine headaches, and depression.  Dr. Cagle diagnosed migraine headaches, abdominal pain, pancreatic insufficiency, brain neoplasm, chronic pancreatitis, cirrhosis, seizure disorder, and central nervous disorder.  He prescribed Lunesta and Ultrase.[39]  A brain MRI revealed a stable meningioma but was otherwise normal.  (Tr. 1155-57, 1232.)

On March 20, 2009, plaintiff complained of anxiety, depression, and nausea.  Plaintiff reported that Ultrase improved her abdominal pain.  Dr. Cagle diagnosed migraine headache, generalized abdominal pain, pancreatic insufficiency, chronic pancreatitis, central nervous disorder, brain neoplasm, cirrhosis, seizure disorder, and acute hepatitis C.  (Tr. 1803-05.)

On April 20, 2009, plaintiff complained of abdominal pain, anxiety, depression, and pain and swelling in the left upper arm.  (Tr. 1801-02.)

On April 21, 2009, plaintiff arrived at the emergency room, complaining of a nose bleed, vomiting, and diarrhea.  Dr. Joseph Brewer Rhodes diagnosed magnesium metabolism disorder and prescribed Zofran.  (Tr. 2004-14.)

---

[38] Cerebyx is used to treat seizures.  WebMD, http://www.webmd.com/drugs.

[39] Lunesta is used to treat insomnia.  WebMD, http://www.webmd.com/drugs.  Ultrase is used to treat shortages of digestive enzymes caused by pancreatic deficiency.  Id.

On May 22, 2009, plaintiff arrived at the emergency room, complaining of chest pain and a seizure that occurred two hours earlier. However, she left without receiving medical attention. (Tr. 1999-2003.)

On May 20, 2009, plaintiff complained of anxiety, depression, and abdominal pain. Dr. Cagle diagnosed acute hepatitis C, abdominal pain, pancreatic insufficiency, brain neoplasm, chronic pancreatitis, central nervous disorder, migraine headaches, seizure disorder, anxiety, and depression. (Tr. 1798-1800.)

On May 21, 2009, plaintiff arrived at the emergency room, complaining of abdominal pain. She was given Demerol, Phenergan, and Dilantin. (Tr. 1272-80.)

On June 1, 2009, plaintiff's father reported that plaintiff overdosed on multiple medications and drank nearly a fifth of whiskey. Plaintiff admitted suicidal intent and explained that a conflict regarding her daughter with her father motivated the attempt. Dr. McNamara diagnosed depression and referred her to the rehab inpatient facility; he noted that she was capable of a regular diet and unrestricted activity, and he noted she was given routine instructions. (Tr. 64-143.)

On June 3, 2009, Dr. Burdine-Syfrett diagnosed depression and alcohol dependence and assessed a GAF of 27. On June 5, 2009, she was discharged with a GAF of 55. (Tr. 145-53.)

On June 12, 2009, plaintiff arrived at the emergency room, complaining of hearing loss that began three days earlier. She left without receiving medical attention. (Tr. 1994-98.)

Also on June 12, 2009, plaintiff reported that her daughter and her daughter's boyfriend stole her medication and that her family gave her Restoril instead of Dilantin.[40] She also complained of nausea, vomiting, sinus congestion, and right ear hearing loss. Dr. Cagle diagnosed otitis media, seizure disorder, acute hepatitis C, pancreatic insufficiency, chronic pancreatitis, central nervous disorder, malignant brain neoplasm, anxiety, and depression. (Tr. 1820-22.)

On June 18, 2009, plaintiff complained of anxiety, depression, vomiting, nausea, and abdominal pain. Dr. Cagle diagnosed malignant brain neoplasm, acute otitis media, seizure disorder, pancreatic insufficiency, chronic pancreatitis, acute hepatitis C, anxiety, depression, and central nervous disorder. He scheduled a pill count after two weeks. (Tr. 1817-19.)

---

[40] Restoril is used to treat insomnia. WebMD, http://www.webmd.com/drugs.

On July 9, 2009, plaintiff arrived at the emergency room, complaining of abdominal pain, mild chest pain, and an anxiety attack caused by the stress of her grandmother's health. Cole Peck, M.D., diagnosed abdominal pain. (Tr. 1907-21.)

On July 17, 2009, plaintiff complained of anxiety, depression, nausea, and abdominal pain. (Tr. 1159-60.)

On July 29, 2009, plaintiff arrived at the emergency room, complaining of abdominal pain, nausea, and vomiting. Jimmy Darrell Bonner, M.D., diagnosed abdominal pain and gastritis. (Tr. 1289-97.)

On August 17, 2009, plaintiff complained of anxiety, depression, and nausea but reported no seizures. Dr. Cagle diagnosed malignant brain neoplasm, central nervous disorder, headache, seizure disorder, pancreatic insufficiency, chronic pancreatitis, abdominal pain, behavior disorder, acute hepatitis C, anxiety, and depression. (Tr. 2112-14.)

On October 2, 2009, plaintiff arrived at the emergency room, complaining of abdominal pain and vomiting. Dr. Joseph Brewer Rhodes diagnosed abdominal pain and gave her Phernergan and Darvocet.[41] (Tr. 1984-93.)

On October 26, 2009, plaintiff complained of abdominal pain and vomiting. Dr. Cagle diagnosed chronic pancreatitis, pancreatic insufficiency, hepatitis C, abdominal pain, central nervous disorder, seizure disorder, and brain neoplasm. Drug screening indicated use of barbiturates, benzodiazepines, oxycodone, and propoxyphene. (Tr. 1176-82.)

On November 18, 2009, plaintiff complained of anxiety, pancreatitis, headaches, and abdominal pain but reported no seizures. Dr. Cagle diagnosed chronic pancreatitis, hypertension, abdominal pain, hepatitis C, and seizures. (Tr. 1174-75.)

On December 2, 2009, plaintiff arrived at the emergency room, complaining of abdominal pain. Jay Lee, D.O., found her lab results unremarkable and diagnosed pancreatitis. (Tr. 1923-28.)

On December 14, 2009, plaintiff arrived at the emergency room, complaining of abdominal pain, nausea, and vomiting. Dr. Wilson diagnosed abdominal pain and constipation and advised to take magnesium citrate and to avoid pain medication. (Tr. 2069-77.)

---

[41] Darvocet is used to alleviate pain. WebMD, http://www.webmd.com/pain-management/news/20101119/darvon-darvocet-banned (last visited December 17, 2013.)

On December 17, 2009, plaintiff complained of abdominal pain and anxiety and reported that she had exhausted her Ultrase prescription. Dr. Cagle diagnosed chronic pancreatitis, hypertension, abdominal pain, hepatitis C, brain neoplasm, and seizures. (Tr. 1963-64.)

On January 12, 2010, plaintiff complained of anxiety, pancreatitis, abdominal pain, and hepatitis C. Dr. Cagle diagnosed pancreatitis, hepatitis C, migraine headaches, hypertension, and seizures. (Tr. 1170-71.)

On January 15, 2010, plaintiff saw Dr. Crippin to evaluate cirrhosis and hepatitis C. He indicated that he began antiviral therapy one and a half years earlier but discontinued it after one injection forced plaintiff to the emergency room. He noted that plaintiff had not followed up with Dr. Ali. Her medications included Altace, Valium, OxyContin, Darvocet, Robaxin, Dilantin, Vistaril, and Phenergan.[42] His impression was cirrhosis secondary to chronic hepatitis C, narcotic dependence, apparent chronic pancreatitis, and depression. He stated that her liver would deteriorate in eight to fifteen years and noted that she would not be a candidate for a liver transplant due to pancreatitis. (Tr. 1941-42.)

On February 10, 2010, plaintiff complained of cough, congestion, diarrhea, nausea, pancreatitis, abdominal pain, and hepatitis C. She reported doing well on medication. He diagnosed pancreatitis, hepatitis C, migraine headaches, seizures, brain tumor, cirrhosis, and bronchitis. (Tr. 1959-60.)

On March 9, 2010, plaintiff complained of abdominal pain. Dr. Cagle scheduled radiation treatment for the brain tumor. He assessed acute pancreatitis, chronic pancreatitis, abdominal pain, migraine with aura, brain neoplasm, dysthymic disorder, reflux esophagitis, insomnia, and epilepsy. He prescribed Protonix and Carafate.[43] (Tr. 1956-58.)

On March 10, 2010, plaintiff complained of nausea, vomiting, abdominal pain, and headache. She reported that she had seizures the previous night and three seizures earlier that day. Dr. Cagle assessed epilepsy, migraine with aura, acute, chronic pancreatitis, brain neoplasm, abdominal pain, dysthymic disorder, reflux esophagitis, and insomnia. (Tr. 1953-54.)

On March 11, 2010, plaintiff arrived at the emergency room, complaining of a migraine headache. However, plaintiff left without receiving medical attention. (Tr. 1979-83.)

---

[42] Altace is used to treat high blood pressure. WebMD, http://www.webmd.com/drugs.

[43] Carafate is used to treat and prevent ulcers. WebMD, http://www.webmd.com/drugs.

On March 22, 2010, Dr. Andrew West found plaintiff's brain MRI unremarkable and could identify no meningioma.  (Tr. 1343.)

On April 5, 2010, Luke Landgraf submitted a Physical Residual Functional Capacity Assessment form regarding plaintiff.  He found that plaintiff could lift less than ten pounds both occasionally and frequently, stand and walk less than two hours in an eight-hour workday, and sit for less than six hours.  Plaintiff reported that she had difficulty caring for her eleven-year old son due to pancreatitis and required assistance from her family.  She reported that she does not perform personal care tasks regularly and has limited social activity.  She further reported that she cannot walk to the mailbox due to pain and that she could not lift, bend, or squat.  Luke Landgraf found plaintiff credible and determined that she could not sustain a forty-hour workweek.  (Tr. 1445-50.)

On October 27, 2010, plaintiff arrived at the emergency room, complained of pain in the chest, arms, and head due to a running into a cow while driving one day earlier.  CT scans of her head revealed no acute intracranial process, and CT scans of her cervical spine revealed no acute fractures.  (Tr. 2089-99.)

On December 21, 2010, plaintiff arrived at the emergency room, complaining of low back pain.  She reported that the pain began when she bent to put on her socks and heard a pop. Dwight Williams, M.D., prescribed Percocet.  (Tr. 2054-60.)

On January 19, 2011, plaintiff underwent a nerve conduction study on her arms. Demetrious S. Spanos, M.D., concluded that plaintiff had mild right carpal tunnel syndrome and borderline left carpal tunnel syndrome.  (Tr. 2087-88.)

On April 6, 2011, plaintiff complained of abdominal pain, severe headaches, and left side back pain that radiated to her left legs.  She reported no seizures during the prior month.  Dr. Cagle assessed lumbago, cervicalgia, motor vehicle accident, epilepsy, migraine with aura, chronic pancreatitis, abdominal pain, brain neoplasm, dysthymic disorder, reflux esophagitis, insomnia, displacement of intervertebral discs without myelopathy, and carpal tunnel syndrome. Drug screening indicated use of methamphetamine, benzodiazepines, cannabinoids, tricyclics, and oxycodone.  He prescribed bilateral wrist splints to treat carpal tunnel syndrome.  (Tr. 2078-84.)

On May 6, 2011, plaintiff  complained of abdominal pain, severe headache, and left side back pain.  She reported two seizures during the prior month.  Dr. Cagle assessed lumbago,

cervicalgia, motor vehicle accident, epilepsy, migraine with aura, chronic pancreatitis, abdominal pain, brain neoplasm, dysthymic disorder, reflux esophagitis, insomnia, displacement of intervertebral discs without myelopathy, carpal tunnel syndrome, and nondependent amphetamine abuse. Drug screening indicated use of benzodiazepines, cannabinoids, tricyclics, and oxycodone. (Tr. 2117-20.)

On July 26, 2011, plaintiff arrived at the emergency room, complaining of a seizure. Don W. Bell, M.D., diagnosed grand mal seizure and epilepsy and prescribed Dilantin. (Tr. 2122-35.)

**First ALJ Hearing**

The ALJ conducted a hearing on January 15, 2008. (Tr. 27-46.) Plaintiff testified to the following. Plaintiff is thirty-four years old, divorced, and has lived alone for two years. She completed the tenth grade and measures five feet, six inches, and one hundred thirty-one pounds. She has gained twelve pounds during the past six or seven months due to her pancreas. (Tr. 32-33.)

In 1994, she worked at Trailer Mobile, where she riveted walls to the side of trailers. Three or four years ago, she worked at Ryan's for about one month but quit due to seizures, hepatitis C, back pain, and high blood pressure. The seizures are her primary concern, and she sees Dr. Cagle for treatment. She seeks but has not yet received treatment for hepatitis C from Dr. Ali. She also sees Dr. Cagle for depression and back pain. In 2003, she admitted herself to a hospital after a motor vehicle accident for depression treatment. She also received treatment for depression at the Family Counseling Center. She continues to struggle with depression. She complies with her medication instructions. (Tr. 34-38.)

She could not stand and walk for five or six hours during an eight-hour work day. She can perform household chores such as vacuuming or sweeping for thirty or forty minutes without a break. She could not sit for five or six hours per day and can sit for only thirty or forty minutes without a break. The trip to the hearing lasted for two hours, and she stopped to leave the car three times during the trip. She could not work even with a sit/stand option due to seizures and back pain. She cannot lift more than twenty pounds. (Tr. 39-41.)

She also lacks attention and concentration. Distractions including her children and finances prevent her from staying on task, and she needs twenty to twenty-five minutes to refocus her attention. (Tr. 41.)

On a typical day, she awakens at around 7:00 a.m. Around 10:00 a.m., she eats. She then makes her bed and checks the mail. She prefers to perform all household chores during one day of the week. She watches television and eats dinner. She sleeps at around 8:00 p.m. When she awakens, she feels rested but groggy due to her medication. She attends AA meetings on weekends, which helps. She does not currently consume alcohol. (Tr. 42-43.)

She has had seizures since 2003 or 2004. She last suffered a seizure on the previous Friday when she had three seizures. The frequency fluctuates from four or five per week to none. During seizures, she loses consciousness, urinates, and often awakens in a hospital. Her seizures continue to increase in severity, and her physician has increased her medication accordingly. (Tr. 43-45.)

**First Decision of the ALJ**

On July 23, 2008, the ALJ found that plaintiff had residual functional capacity (RFC) to perform a wide range of light work limited to simple repetitive tasks and with all necessary seizure precautions. The ALJ consulted the Medical-Vocational Guidelines to determine that plaintiff was not disabled. (Tr. 11-22.)

Plaintiff appealed the decision to the district court. On March 16, 2011, the district court reversed and remanded the decision, ordering the ALJ to "(1) further evaluate the plaintiff's maximum residual functional capacity and provide appropriate rationale with specific references to the evidence in support of the assessed limitations; (2) fully evaluate the medical opinions in the record; (3) evaluate the claimant's credibility; (4) make a determination as to the materiality of drug and/or alcohol abuse; (5) evaluate the claimant's physical and mental impairments based on the evidence of record; (6) afford the claimant the opportunity to submit additional evidence; and (7) obtain medical expert and vocation expert evidence as required." (Tr. 1459.)

**Second ALJ Hearing**

A different ALJ held a hearing on November 9, 2011. (Tr. 1378-1422.) Plaintiff testified to the following. She is thirty-seven years old, right-handed, and lives with her sister and her sister's spouse. She obtained a GED and training as a certified roller and forklift operator. (Tr. 1382-83.)

She last worked operating the register at Ryan's Steakhouse in Jonesboro in 2004. She can no longer work due to seizures and brain surgery. She has had the brain tumor since at least 2006 and sees a neurologist once or twice per year. Doctors cannot operate on the tumor, and the tumor has not grown. The brain tumor causes her seizures. She also suffers chronic pancreatitis, liver cirrhosis, hepatitis C, high blood pressure, and depression. She takes Zantac for pancreatitis. She takes Carafate to coat her stomach to alleviate nausea. She takes mirtazapine for sleep and promethazine for nausea. She also takes methocarbamol for her back. She has a herniated and protruding disc and a sciatic nerve. She takes morphine for pain three times per day, but it does not help much. She received physical therapy for her back pain about a year and a half ago. She takes medication for her blood pressure. She has taken Dilantin for seizures since 2004 or 2005. She tried Depakote for seizures but discontinued it after a short period of time. Dilantin controls her seizures, although she still has them. During the past six months, she has suffered three or four seizures. (Tr. 1384-90.)

On a typical day, she awakens at 7:00 or 8:00 a.m. and sleeps between 11:00 p.m. and 1:00 a.m. She takes Ambien and Remeron for sleep. She last saw a psychiatrist a year or two years earlier. She reads romance novels and watches television. Her children provide her with books. She cooks and launders, but her children clean for her. She only leaves her home to see her doctors. Her children, ages 19, 18, and 13, visit her but live with their grandmother and father. She enjoyed sewing but no longer sews due to her eyesight. She wears glasses. She drove to the hearing and has a driver license. Driving causes nervousness. She drives her father's car. She sees no doctor other than Dr. Cagle on a regular basis. She began treatment for hepatitis C but could not tolerate it. (Tr. 1391-94.)

She can lift only five to ten pounds. She can move coffee tables to clean spills. She cannot sit for longer than thirty to forty minutes due to the pressure on her back before she needs to walk. She struggles with balance when she stands. She can stand and walk for only ten to

fifteen minutes. She uses a cane but left it in the car for the hearing. Her doctor did not prescribe the cane, but she uses it for balance and to alleviate pressure on her back. She had shots in her back six or seven months earlier. (Tr. 1394-97.)

She has difficulty concentrating and is often in a daze. She cried the previous night due to her child. She is not emotionally stable. Her first child resulted from rape, and the rapist is in prison. Three men raped her and her niece, and they are also in prison. She is easily upset. She is close with her father, and her mother is deceased. She performed adequately at work until her seizures began. Dr. Cagle prescribed her medicine to control her seizures, which satisfies plaintiff. She began receiving social security income over one year earlier. She receives food stamps. (Tr. 1397-1401.)

She takes an hour to an hour and a half to leave her bed after awakening. She brushes her teeth and watches television. She eats at 2:00 to 3:00 p.m. She bathes and puts on her pajamas. She visits with her children, reads a books, or sits outside. She then goes to her bed but does not sleep well. Ambien no longer helps her sleep. She does not consume alcohol but uses tobacco. She is allergic to ibuprofen and Zofran. She has two DWIs. She has been sober for three years. (Tr. 1401-03.)

She cannot consume citrus due to her pancreas and liver or spicy or greasy food due to her stomach. She takes Maxalt for migraines, but it is ineffective. Medicaid and her father finance her medical bills. Her medicine causes fatigue and weakness. Morphine causes nausea and makes her feel antsy. (Tr. 1404-05.)

Mark Farber, M.D., testified at the hearing as a medical expert. He found that her medical diagnoses included seizure disorder secondary to a benign brain tumor but stated that he could not determine whether medication adequately controlled them. He also found that she had hepatitis C and liver cirrhosis and that she tried interferon treatment but could not tolerate it. He noted that she received instructions to follow up on her liver. He also noted that she was instructed to obtain a pancreatic test. He noted that she did not take insulin, which indicated insignificant pancreatic insufficiency. He found that her pancreas caused her pain and that she took narcotics. He also noted that she had hypertension and reflux esophagitis. (Tr. 1406-10.)

He stated that hepatitis C causes fatigue and would progress without treatment, although she would not need a liver transplant for up to fifteen years. He noted that sobriety could have

improved her pancreas condition and that she needed to follow up on hepatitis C. He opined that pending further studies on her brain tumor and seizure medication levels, plaintiff could perform only sedentary work with no climbing ropes or ladders, balancing, stooping, crawling, and kneeling or extreme temperatures. (Tr. 1411-12.)

Vocational expert (VE) James Bordairy also testified at the hearing. During her longest period of employment, she worked for Trailer Build for over a year, riveting pieces of trailers together. She left due to her ex-spouse in the 90s. The VE found that her past work included waitressing, which is light, semi-skilled work, and trailer assembler, which is heavy, semi-skilled work. (Tr. 1414-17.)

The ALJ presented a hypothetical individual of plaintiff's age, education, and work experience and limited the individual to sedentary work but required the individual to avoid stooping, kneeling, crouching, crawling, concentrated exposure to extreme temperatures, extreme humidity, and noxious fumes, and unprotected heights and machinery. The ALJ further limited the individual to simple and repetitive work that requires no close social interactions with the public. The VE responded that such individual could not perform plaintiff's past work but that such individual could perform as an assembler, which is sedentary work with about 850 positions in Missouri, hand packer or sorter, sedentary, unskilled work with about 400 positions in Missouri, and general office help, which is sedentary, unskilled work with 2,300 positions. (Tr. 1417-18.)

The ALJ altered the hypothetical individual by requiring such individual to miss more than two days per month. The VE responded that that rate of absenteeism would preclude employment. The ALJ altered the hypothetical individual by requiring such individual to have an additional, randomly scheduled break once per week. The VE responded that the additional break would preclude employment. The ALJ altered the hypothetical individual to require brief, periodic body readjustment. The VE responded that the need to stretch would not preclude employment in the aforementioned jobs. (Tr. 1418-19.)

## III. DECISION OF THE ALJ

On February 23, 2012, the ALJ issued a decision that plaintiff was not disabled. (Tr. 1356-67.) At Step One of the prescribed regulatory decision-making scheme,[44] the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date, April 26, 2006. At Step Two, the ALJ found that plaintiff's severe impairments included pancreatitis, hepatitis C, depression, anxiety, seizure disorder, and a history of alcohol abuse. (Tr. 1359.)

At Step Three, the ALJ found that plaintiff had no impairment or combination of impairments that met or was the medical equivalent of an impairment on the Commissioner's list of presumptively disabling impairments. (Id.)

The ALJ considered the record and found that plaintiff had the residual functional capacity (RFC) to lift and carry up to ten pounds occasionally and less weight frequently, sit about six hours during an eight-hour workday, and stand and walk for two hours. The ALJ further found that plaintiff could only occasionally climb ramps and stairs, could never climb ladders, ropes, or scaffolds, could only stoop, kneel, crouch, or crawl, and could never balance at heights. The ALJ further found that plaintiff must avoid exposure to extreme gases and dangerous hazards, including unprotected heights and dangerous machinery. Additionally, the ALJ found plaintiff limited to simple, repetitive work that requires no close interaction with the public. At Step Four, the ALJ found plaintiff capable of performing no past relevant work. (Tr. 1361-65.)

At Step Five, the ALJ found plaintiff capable of performing jobs existing in significant numbers in the national economy. (Tr. 1366.)

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports

---

[44] See below for explanation.

and detracts from the Commissioner's decision.  Id.  As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months.  42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d at 942.  A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment.  20 C.F.R. § 404.1520(a)(4)(i)-(iii).  If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five.  Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW).  Id. § 404.1520(a)(4)(iv).  The claimant bears the burden of demonstrating she is no longer able to return to her PRW.  Pate-Fires, 564 F.3d at 942.  If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy.  Id.; 20 C.F.R. § 404.1520(a)(4)(v).

## V.  DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to properly assess plaintiff's credibility, and (2) by failing to properly determine plaintiff's RFC.

## A. Credibility

Plaintiff argues that the ALJ failed to properly assess plaintiff's credibility regarding her complaints of subjective pain.

To evaluate a claimant's subjective complaints, the ALJ must consider the Polaski factors: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the condition; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." Wildman v. Astrue, 596 F.3d 959, 968 (8th Cir. 2010). The ALJ must acknowledge and consider these factors but "need not explicitly discuss each Polaski factor." Id. The ALJ may also consider inconsistencies in the record as a whole. Id. "[Courts] defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." Id.

Plaintiff argues that the ALJ erroneously discredited plaintiff due to her poor work history. The ALJ may consider a claimant's work history to determine credibility. Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). From 1992 to 2003, the year prior to her alleged onset date, plaintiff earned a total of $21,022.35 and averaged $1751.86 in annual income. (Tr. 1580.) Plaintiff argues that her work history is consistent with her alleged condition. However, plaintiff alleged that her inability to work began January 1, 2004. (Tr. 208.) Plaintiff also cites Gude v. Sullivan, 956 F.2d 791 (8th Cir. 1992). In Gude, the Eighth Circuit admonished an ALJ for penalizing a claimant "for engaging in low-paying work." Id. at 795. Here, however, the ALJ does not mention plaintiff's rate of compensation but rather infers from plaintiff's annual income that she worked very little. (Tr. 1364.)

Plaintiff also argues that the ALJ erroneously discredited plaintiff due to her alleged onset date preceding her application date by two years. The ALJ reasoned that an individual with plaintiff's alleged conditions and severity would have filed sooner. Plaintiff argues that the ALJ was not entitled to discredit plaintiff on this basis because plaintiff may have had reasons for the filing delay that were unrelated to her credibility. Nevertheless, the court finds no alternate explanation for the filing delay in the record, and the court cannot find that the ALJ's conclusion was unreasonable. See Krogmeier, 294 F.3d at 1022; see also Phillips v. Astrue, 912 F. Supp. 2d 749, 764 (S.D. Ind. 2012) (upholding the ALJ's credibility decision that included a filing delay as a factor).

Plaintiff's argues that the record did not support the ALJ's claim that she failed to seek treatment regularly for seizures during the relevant period, April 27, 2006 to January 2010. From

2006 to 2010, not including her incarceration, plaintiff received regular medical care but complained of seizures on only six occasions. (Tr. 564-66, 590-91, 1026-36, 1930-39, 1999-2003.) On March 24, 2007, plaintiff reported a seizure but that she had exhausted her seizure medication. (Tr. 564-66.) On March 31, 2008, plaintiff reported to Dr. Tolentino that she did not suffer seizures when she took her medications. (Tr. 1646-49.) On February 20, 2009, plaintiff reported a seizure but also that her medications were stolen, and on May 22, 2009, she reported a seizure but left without receiving medical attention. (Tr. 1930-39, 1999-2003.) Accordingly, substantial evidence supports the ALJ's claim that plaintiff failed to seek treatment regularly for seizures during the relevant period.

Plaintiff also argues that the ALJ improperly discredited her on the basis that no treating or examining physician opined that she was disabled. Plaintiff argues that the record does not reflect that any such physician was asked to present such an opinion. "A treating doctor's silence on the claimant's work capacity does not constitute substantial evidence supporting an ALJ's functional capacity determination when the doctor was not asked to express an opinion on the matter and did not do so, particularly when that doctor did not discharge the claimant from treatment." Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001). Although silence alone cannot constitute substantial evidence to support an RFC determination, the ALJ may consider such silence for purposes of credibility. Teague v. Astrue, 638 F.3d 611, 615 (8th Cir. 2011); Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004).

The ALJ additionally discounted plaintiff's allegations due to the lack of relevance of her alleged onset date and application date to any aggravating medical factors. See Burke v. Astrue, 2011 WL 3903435, *10 (E.D. Mo. 2011). Further, the ALJ lawfully discounted plaintiff's testimony due to her failure to comply with prescriptions for medication and instructions to follow up. See Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir. 2006).

Accordingly, substantial evidence supports the ALJ credibility determination, and plaintiff's argument is without merit.

**B. RFC determination**

Plaintiff argues that substantial evidence does not support the RFC determination because the ALJ relied on the opinion of Dr. Farber, a non-examining physician. Residual functional

capacity is the ability of a claimant "to do the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." Wilcutts v. Apfel, 143 F.3d 1134, 1137 (8th Cir. 1998). Residual functional capacity is a medical determination. Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000). Some medical evidence must support the RFC determination. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).

"The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole." Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000). However, "an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment." Hacker v. Barnhart, 459 F.3d 934, 939 (8th Cir. 2006); 20 C.F.R. § 404.1527. Here, the ALJ explained that he relied on Dr. Farber's opinion due to the absence of any other medical opinion in the record during the relevant period. (Tr. 1364.) Moreover, the ALJ did not rely solely on Dr. Farber's evidence but also relied on the records of Dr. Cagle, Dr. Tolentino, X-rays, MRI scans, and emergency room records. (Tr. 1361-65.)

Plaintiff also argues that Dr. Farber's testimony revealed that he lacked sufficient information regarding plaintiff's seizure disorder. However, plaintiff reported that she did not suffer seizures when taking medication and rarely reported them as discussed above. Regarding the brain tumor, brain MRIs revealed a stable tumor, and Dr. Tolentino found that the tumor did not cause seizures or headaches. (Tr. 1048-49, 1232, 1343, 1646-49.) Regarding hepatitis and pancreatitis, plaintiff failed to follow up with medical professionals or listen to medical instructions to refrain from alcohol, and the medical tests were generally unremarkable. (See e.g., Tr. 64-143, 1195-1211, 1923-28, 1930-39, 1941-42.) Additionally, plaintiff only rarely complained of fatigue. No medical professional indicated that pancreatitis or hepatitis limited plaintiff's ability to work. Furthermore, the ALJ limited plaintiff to sedentary work. (Tr. 1361.) Although plaintiff argues that she cannot sit for six hours per day, her properly discredited testimony constitutes the sole evidentiary support for this limitation.

Regarding anxiety and depression, failure to comply with prescriptions and alcohol use caused plaintiff's two of hospitalizations for her mental condition during the relevant period. (Tr. 64-143, 746-76.) Plaintiff also went to the emergency room for a panic attack under the stress of her liver condition and her daughter but was discharged with no treatment plan or specific

medical instructions.  (Tr. 2028-35.)  She rarely complained of depression and did not receive substantial mental health care.  Dr. Cagle, her primary care provider, treated her mental condition conservatively and did not indicate that her mental condition affected her ability to work.  Further, the ALJ limited plaintiff to simple, repetitive work that does not require close interaction with the general public.  (Tr. 1361.)

Accordingly, plaintiff's argument that substantial evidence does not support the RFC determination because the ALJ relied on the opinion of a non-examining physician is without merit.

Plaintiff also argues that the ALJ erred by relying on the VE's response to a hypothetical question that failed to capture the concrete consequences of plaintiff's impairments.  "Testimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision."  Hillier v. Social Sec. Admin., 486 F.3d 359, 365 (8th Cir. 2007).  "Hypothetical questions should set forth impairments supported by substantial evidence on the record and accepted as true and capture the 'concrete consequences' of those impairments."  Id.

As set forth above, substantial evidence supports the RFC determination of the ALJ.  The ALJ's hypothetical question reflected his RFC determination.  Accordingly, the ALJ did not err by relying on the VE's testimony.

## VI.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed.  An appropriate Judgment Order is issued herewith.

/S/  David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on June 6, 2014.